IN THE UNITED STATES DISTRICT
COURT MIDDLE DISTRICT FLORIDA.
JACKSONVILLE DIVISION. 3:13-CV-1527-J-34 JKL

ANTHONY L. COOPER, INJUNCTION, STATED. FEDERAL-WITNESS, CONFI. INFORM.
PROTECTIVE CUSTODY ~~~~ INJUNCTION ON M.
vs.                                                         CASE NO.
TARA WILDES, Director of
DUVAL COUNTY JAIL JAX, FLA, & Chief ~~~~
CHIEF OF Security et al. Respondents.

NOTICE OF INJUNCTION.
Emergency ~INJUNCTION~ for INJUNCTIVE
Relief Reported crime
Jail security Failure & Assault on INMATE. Cooper

The undersigned petitioner now moves to filed This petition for writ of Injunction
Relief (mandamus) Relief AND (Emergency ~INJUNCTION~ Title) to be entertained, And state
Alleges. Pursuant to Fed. R. Procedures. For (copies) of this + "INJUNCTION" "Injunction"
And as well as any such (court-order) [U.S. Fed. Judge-orders] court-order.
Be sent "mailed (VIA) Directly "TO" ATTN: (NOTICE OF JAIL BREACH -
Of security Employee negligent Liability of ATTN: TARA H.
Wildes, Director of JAILS Division & Sheriff John Rutherford,
(Internal unit) Office of The Sheriff Consolidated City of Jacksonville,
- #501 East Bay, St. JAX, FLA. 32202.)" I, state that I, AM
Under imminent danger of serious physical injury Harm. And
(INMATES) Identified (threats) on my life threating to kill-
me. or Assault Battery, murdered me. For (Confidentially-
Informantly testifying either on them or there (gang-Related
Assoc. Street & Jail-House-gangs members of the so called
(CUT-Throats) members, et al. I, now state that on The
date of (month) of (NOV. 29, 2013. thru - Dec. 4, 2013.)
Dates. While and During (housing) confined with (INMATE
- William Watson) gang member of (INMATE Ron Rose) - (Charles Cope)
(Raymond Breedan) Whom the (INMATE William Watson) ALSO housed IN
William Watson   Charles Wayne Cope
Cell # No. 64. 6-west-3-6. Duval County JAIL,
#501 E. Adams, St. JAX, FLA. 32202. As I, was Housed
Are Housed IN Cell - No. #65. 6-west 3-6. Dorm of  → Anthony Cooper
Same JAIL. on same dates. did so (Threating) LMY-
(Life) And Threating (INMATE Maurice Johnson)
(Life) to murder (killed) Both of us. And also
(Threating) to (killed) murder Assault (Battary)
INMATE(S) IN other cells of 6-west 3-6. Dorm.

"(On or About The date of (months)(Aug.-2013.-July-2013 &.- -9-2013.)-I, Further STATE That I, HAVe(Testified) ANd given Sworn oAth (TAped) TApe-Recorded.(STATements) To(JSO-police DeTectives) (Homicide-police-unit)JAX,FLA, Shviff offices. IN TWO-2-SepeRATe (Murders) Homicides chARges crimes. of 1. Cedreict4z. &, 2. ERic ClAyton &. others inmates An d others) And These INMATes ALong with William WATson ThrestningmyLi

> prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g).

And Did so Stabbed me with (Broom-Handle-Stick) on 12-8-13 date threw hole Food And (Threating) to do Body (Harm) Assault me more. To A, Incel Door. And murder killed me If they get chance. (Employee) Staff (Member) of Jail. He stated such also to me. And made these types of (Threats) on my Life As well As others. This inmate (munipulated) The (Swing-Shift) Relieved-Shift Officers. To (Move) Him into The 6-West 3-b-Dorm bldg. - Cell No. #64. As (Orders) Of (9 Gang members) Jail House And (Gang Leaders) COA+Throat Instructions, Notes, Kites, Letters, COA+Throat Written To Him That He Showed me. Such. (Prior) To (Acknowledge) Learning. That I, was A, informed (Confidential-Informant). By (Others) (Gang members)

Note on-12-8-13. (williamwatson) charlescope attc inmates. Stabbed me with Broom-Handle Stick. Threw Food Hole in Cell Door. Staff Aule.

1. Ron Rose, Inmate. & 2. Joe Louis, Inmate.
   Charles Cope - AKA Tatoo...                Raymond Bregon.

3. Others. These (Inmates) Pose (Serious) Threats To my Life As Well As (Others) Inmates, Lifes. And (Correctional Officers) (Staff-Employees) Security. I, (Attempt) To Notify. Such (Staff) Dorm 6 West. 12-6-13. 10:00 pm SGT. Peterson - 3:00 pm to 11:00 pm. Shift 6-west. (Employees) of (Others Shifts) to No! Avial. did they Acknow- -ledge such. I, Further State that (Inmate William Watson) did (Charles Cope) Raymond Bregdon So State tell me That He is going to get and Have The other (Relief-Shift) Swing-Shift. on (Dec. 6, 2013. & Present) dates. To (Move) Him into Cell-No. #71. 6-West 3-b. Dorm. Which Now Have A, (Security-Broken) Lock. And The Cell-#71. Cell door (Track)(s) of door is off, (Track) Broken. To the (Point) Where A, Inmate Can (Open-up) The door. and Let His on Self out of cell. To (Attack) Others Inmates. As well As (Staff-Employees) To No! Avial - (Security Employees) Of Duval County Jail, Jax, Fla. Taken Action. And moved Or (Re'Housed) (Inmate William Watson Cell-64.) 6-West 3b. And (Inmate Ron Rose 6-West 3-A.) To Another Locition. To Be (Precausion) Safe. Or Taken Action. Nither (Fixed) Or Repaired (Security Locks) on (Door Tracks) of Cell-#71. After I Reported to Staff. Security

I, Further Request To be (Placed-Put) Into (I-Block) (Protective) Security I-Block Housing To Aviod Serious Body Harm Intenest (Imminent) Danger Serious Physical Injury. By: And Breach of Jail Employees Security. Liability. X _____
12-4-13.

originally reviewed defendant's case. His findings are summed up as follows:

The court is faced with a young man who has never been in trouble before. The court has determined that a battery does indeed exist. However, I can't help but reflect upon the circumstances of this alleged battery. The victim was not injured. There were no blows exchanged. The parents of the victim refused to discuss the incident with the alleged perpetrator and his parents. I had hoped initially that judicial involvement could be avoided in this case. However, since judicial disposition is at hand I would recommend, as I did initially, that [the defendant] be referred to the [community arbitration program] with withheld adjudication for arbitration purposes. I would hope that resolution of this matter would be quickly found.

Based upon this report, the judge entered an order on May 12 finding that the defendant committed the offense of battery, withholding adjudication of delinquency, and referring the defendant and the victim to the community arbitration program. The order also required the parents of both the defendant and the victim to attend the arbitration sessions.  > (FN2)  On June 11, defendant filed a notice of appeal to this Court.

> [1] > [2] The defendant raises basically two points on appeal. His first argument is that the criminal count of battery, as described in Section 784.03, Florida Statutes (1981), is not intended to proscribe or punish harmless child's play which does not cause injury. While we agree that defendant's conduct in this case is more properly dealt with outside the context of criminal law, we cannot impose our preferences on the discretion of the trial judge, particularly in light of the clear language of Section 784.03.

------------ Excerpt from page 436 So.2d 206   follows ------------
which states that a person commits criminal battery if he "actually and intentionally touches or strikes another person against the will of the other."   The defendant has not referred us to any case law holding that the degree of injury caused by an intentional touching is relevant to determining whether a criminal battery has been committed; rather, it is clear from Section 784.03 that any intentional touching of another person against such person's will is technically a criminal battery. The trial judge acted within his discretion in finding that the defendant committed the offense of battery.  > (FN3)

> [3] The defendant's second point on appeal is that he acted in self-defense. There is competent and substantial evidence to show that the defendant was the aggressor; therefore, this point is without merit.

Although the trial judge correctly found that the defendant committed the offense of battery, he disposed of the case in a manner not authorized by law. As discussed earlier, Section 39.04, Florida Statutes (1981), requires that the intake officer in a juvenile proceeding make a recommendation to the State Attorney as to whether the State Attorney should file a petition for delinquency, refer the child to a community arbitration program, or take such other action as may be appropriate in the circumstances. The State Attorney is vested with the sole discretion to decide what action to take. In the present case, the State Attorney chose to file a petition for delinquency.

Section 39.09(3), Florida Statutes (1981), states that after an adjudicatory hearing on a petition for delinquency the trial judge may dispose of the case in basically three ways:

1. Dismiss the case upon a finding that the defendant has not committed a delinquent act;

2. Enter adjudication of delinquency; or

3. Withhold adjudication of delinquency and impose upon defendant community-based sanctions in a community control program.

Section 39.10, Florida Statutes (1981), which deals specifically with adjudication, also sets forth the above alternatives as the only dispositional acts authorized.

> [4] In the present case, the trial judge found that the defendant committed the offense of battery, withheld adjudication of delinquency, and referred the defendant to a community arbitration program. This is not a statutorily authorized disposition of the case. In addition, it conflicts with the judgment and discretion of the State Attorney, who decided against arbitration, and it imposes upon the parties the burden of retrying the case.

Pursuant to Section 39.331, Florida Statutes (1981), a community arbitration program is specifically designed to:

[P]rovide a system by which children who commit certain minor offenses may be dealt with in a speedy and informal manner at the community or neighborhood level, in an attempt to reduce the ever-increasing instances of juvenile crime and permit the judicial system to deal effectively with cases which are more serious in nature.

District Court of Appeal of Florida,
Fourth District.

STATE of Florida, Appellant,
v.
Harvey M. HILL, Jr., Appellee.

No. 4D11-927.
Aug. 15, 2012.

Background: Defendant moved to dismiss an aggravated battery with a firearm charge, and the Circuit Court, Fifteenth Judicial Circuit, Palm Beach County, John S. Kastrenakes, J., granted the dismissal. State appealed.

Holding: The District Court of Appeal, Stevenson, J., held that, as convicted felon in possession of a firearm, defendant was precluded from use of the Stand Your Ground defense.

Reversed.

West Headnotes

Assault and Battery K> 67

37 ----
37II Criminal Responsibility
37II(A) Offenses
37k62 Defenses
> 37k67 Self-defense.

Defendant was a convicted felon in possession of a firearm at the time he shot victim, and, as such, was precluded from use of the Stand Your Ground defense to the charge of aggravated battery with a firearm; due to the possession, defendant was engaged in an "unlawful activity" at time of shooting. > West's F.S.A. § 776.013.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Amy Lora Rabinowitz, Assistant Public Defender, West Palm Beach, for appellee.

STEVENSON, J.

The State appeals the trial court's dismissal of an aggravated battery with a firearm charge against the defendant pursuant to Florida's Stand Your Ground law, > section 776.013, Florida Statutes (2009). Because the defendant was a convicted felon in possession of a firearm at the time of the shooting, the defendant was precluded from use of the Stand Your Ground defense and, thus, we reverse the dismissal.

The defendant was charged by information with aggravated battery with a firearm (count I), carrying a concealed firearm (count II), felon in possession of a firearm or ammunition (count III), and retaliation against a witness (count IV). Prior to trial, the defendant filed a motion to dismiss count I, alleging that his use of force that led to the charge was justified under the Stand Your Ground law. During the hearing on the defendant's motion, the defendant testified that he was involved in an altercation with Anton Peavy and Andre Solomon regarding a woman with whom he had been sexually involved. Peavy and Solomon approached the defendant while he was sitting on his porch and began questioning him. Solomon had a gun and the two men were much larger in size than the defendant. According to the defendant, Peavy "snapped" and both Peavy and Solomon "rushed" him. The defendant could not flee because he was cornered on the porch. The defendant pulled out a gun that he had in his pocket and shot Peavy

------------ Excerpt from page 95 So.3d 435. follows ------------
once in the stomach. The defendant had previously been convicted of two felonies. The trial court reasoned that the defendant's crime of possession of a firearm by a convicted felon did not preclude him from seeking dismissal under the Stand Your Ground law. Whether the trial court erred in its conclusion presents an issue of statutory interpretation that is reviewed de novo. See > Anderson v. State, 87 So.3d 774, 777 (Fla.2012).

# OFFICE OF THE SHERIFF
## CONSOLIDATED CITY OF JACKSONVILLE

**John H. Rutherford**
**Sheriff**

501 EAST BAY STREET • JACKSONVILLE, FLORIDA 32202-2975

October 16, 2013

Anthony Cooper
2013018708
6W3B065

Dear Mr. Cooper,

I received your correspondence dated 09-22-13 today, wherein you describe a number of complaints against specific individuals and a request to be returned to isolation (I-block). As we only have a limited number of isolation cells, our use of them has to be prioritized and right now, we do not have any available.

A lieutenant will speak with you about your complaints regarding the individuals you named, and if appropriate, further investigation will be conducted.

Sincerely,

John H. Rutherford, Sheriff

Tara H. Wildes, Director

Cc: Security Committee

A Nationally Accredited Agency     An Equal Opportunity Employer

---

**Handwritten annotations:**

EXHIBIT #(A). Evidence of Federal Judge.

These are some of Inmates names & Identity that I am a, State & Federal-witness againsts in others State/Federal criminal cases, that I have all-ready given issued documented (evidence) proof to JSO-police Homicide unit detectives police Jax, Fla. & (Taped-Recorded) statement evidence & to States Attorney Angela Corey, & prosecuters Asst. & F.B.I. & Judge Vigina Norton, Div. CRH. & Judge Coffer & Judge Russell Healy. & Judge C Coffer.

Againts and to the Sheriff Joey Dobson, Baker County police, Baker County.

NOTE: Jail Director Tara Wildes & Chief Kilcrease & Patrick Johnson & others staff. Jail-Security City of Jax, Fla. Employees are in danger giving in danger my life to. might be killed.

List of inmates pose threat to my life
✓ 1. Raymond Breedon.
✓ 2. Cedric Tate.
✓ 3. Charles Cope.
✓ 4. William Watson
✓ 5. Ron Rose.
✓ 6. Ron Thomas.
✓ 7. Joe Luis
✓ 8. Inmate Battles
✓ 9. Inmate Lee.
✓ 10. Others

I am being denied refused I-Block I cell/ation Protection security cell. House Alone

TO: ATTN: THE U.S. FEDERAL F.B.I.
& FEDERAL U.S. MARSHALS
JAX, FLA. OFFICES. (A.T.F.)
& -- c/o A.T.F.-AGENTS, JAX, FLA. &
ATTN: U.S. FEDERAL-PROSECUTOR-
OFFICE - ATTORNEYS, JAX, FLA.

INRE: CEDERIC TATE, Homicide murder-
CASE, & shooting AT U.S. Federal Judges
-- AND Public defenders. U.S. Fed.

## GENERAL-AFFIDAVIT.

I, STATE THAT (CEDERIC TATE) ALSO AND did STATE to me THAT (He) AND (others) ALSO HAD (something) to do with A, (Shooting) AT A, (U.S. Federal-Judge) - AND (U.S. Federal-Public-defenders) (After) He STATED (Other) STUFF About (About) Him (Shooting) TO (death) Death. (Victim) That He Told me He (Shot) to death. During Armed-Robbery. I, then Asked (Him) About Do He KNOW? Anything About Anyone (Shooting) AT A, U.S.- (Federal-Judge) etal. And that's when He CAME forth And told me THAT He ALSO HAD (something) To do with THAT shooting AT U.S. Fed. Judge MR. Tim Cortigan As well THAT He and "others" were paved money - DRUGS. To Do So.

1 C.T. and E. And others Fired shots At Federal Judge. and others we were paid to Do C.

DRIVIN OVER HIT STRUCK (high) (ERIC CLAYTON) did so Ki... (murder) and they were (Exiting) Drug-Related area, of the southside of JAX, FLA. DUVAL county. And He (ERIC CLAYTON) That they (Both) could Have Aviod such. But Ignored. And committed This (Murder Homicide) on The (small-child-Baby) victim. Then they Both (Fled) Fleed The site of crime. And went Exit out of Town to Another state county. unknown to me. And That ANGELA COREY, Esq. Chief Prosecutor. was prosecuting his case His case. And That He killed (small-baby) Child INfant (Intentionaly) Driven over The baby while He was (Fueding) Altercation with Drug Dealers He stated such while I was Housed with Him Duval County Jail JAX, FLA.        OATh.           BY: x _Anthony L. Cooar_
                                                                Anthony L. Cooar
I, Declare This is TRUE correct This 30th day witness of August 2013.  8-30-13.

I, Further State Allege That,

RE: U.S. Federal Mail Tampering & Fed. Crime mail NOT Being Forward By Inmate A. Cooper to 100 Lawyers Offices

## OATH

I, Declare under penalty Perjury This 11th day of Dec. 2013. This is True correct. 12-11-13. date.

I, Further State That I, Have mailed out Over A. Sum of "#100"- Documented Letters, Envelopes," with (U.S. Stamps) From (Others) whom Are Helpful-Concern. Postal TO (Lawyers) (Attorneys At Law Offices) Of Lawyers. JAX, FLA. & Statewide, Florida. And out of Town Statewide. From dates: of, months Time of: (August 1, 2013. thru - Dec. 11, 2013. -& ongoing Future present days.) By The Duval County Jail mail-Staff Employee, 500 E. Adams, St. JAX, FLA. 32202. Ms. Clark, mail-Staff. & U.S. Postal, Employee. U.S. Post Office Naldo, Ave (San Marco Branch) JAX, FLA. et.al.

And To this date of (Dec. 11, 2013.) I Am (NOT) Received NO! Type of Responds Replyes Back From Help! Of These Lawyers & Attorney That I wrote To Requesting To Come (visit) me For Serious Help!!! And Representation Assistants In (Both) Civil-Accidents -Criminal cases Claims

I, Now (Suspect) That my U.S. Postal (Mail) is (NOT) Being mailed Forward As & U.S. Fed crime Tampered With U.S. Gov. Mail. Also one Lawyer Say He never Received such mail.